IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHELLE VASQUEZ, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:24-cv-02183-HLT-RES |
| RECOVER-CARE SHAWNEE, LLC, et al., | |
| Defendants. | |

## ORDER

This is an FLSA case. The parties have reached a settlement. The Court previously conditionally certified this as a collective action, preliminarily approved the settlement, and authorized notice to all potential opt-in plaintiffs. Doc. 107. The parties issued the notice. More than a thousand plaintiffs have submitted opt-in forms.[1] Currently before the Court is Plaintiffs' unopposed motion for final certification and approval of the FLSA collective action settlement. Doc. 108. The Court grants the motion and finds that final certification of the class is appropriate and that the settlement, including the award of attorneys' fees, is fair, equitable, and reasonable.

I.  BACKGROUND

This case arises out of Plaintiffs' employment with Defendants at various skilled nursing facilities across Kansas. The amended complaint alleges several wage-and-payment claims, including a timeclock rounding claim, a non-payment of bonuses claim, an underpayment of

---

[1] Originally, the parties counted 1,085 opt-in plaintiffs. Doc. 109 at 1. After the motion for final certification and approval was filed, the class administrator discovered 66 additional timely claim forms. Doc. 110 at 1. The parties have agreed these additional claims should be included, for a total of 1,151. *Id.*

overtime claim, and an unpaid meal periods claim. *See generally* Doc. 79. Plaintiffs assert these claims under the FLSA, the Kansas Wage Payment Act, and state law. *Id.* at 18-24.[2]

On November 12, 2024, the parties reached an agreement in principle to settle the case as a collective action. Doc. 109 at 4. As part of the settlement, the parties have agreed to a collective action composed of current and hourly, non-exempt employees at 23 facilities. *Id*.

On March 13, 2025, the Court conditionally certified a class. Doc. 107. As defined in the settlement agreement, the proposed class consists of:

> current or former full time hourly non-exempt employees who worked at one or more of the 23 skilled nursing facilities managed by MRC in Kansas during the Recovery Period who meet either or both of the following conditions: (1) the Defendants' time records for the employee reflect at least 25 auto-deduct meal periods during the Recovery Period; or (2) the Defendants' pay records for the employee reflect at least one non-discretionary bonus payment during a week in the Recovery Period in which the employee worked in excess of 40 hours, but the bonus was not contemporaneously included in 'regular rate' for purposes of calculating overtime compensation.

Doc. 107 at 4. The class was conditionally certified for purposes of settlement on two claims. The first is the overtime claim, which is based on the miscalculation of overtime pay where bonuses were received. *Id.* The second claim is for unpaid meal periods, for which Plaintiffs contend employees were logged out for 30-minute meal breaks regardless of whether meal breaks were taken, unless managers took action to override the practice. *Id.* The Court found that the individuals in the proposed class were similarly situated for purposes of sending notice in that they were subject to a single decision, policy, or plan, and certified the class for purposes of the two settlement claims. *Id.* at 5.

---

[2] Plaintiff Michelle Vasquez also asserts a wrongful-termination claim. The parties have reached a separate resolution of that claim and it is not at issue in the current motion. Doc. 109 at 3.

The Court also preliminarily approved the settlement. It found the overtime and meal-period claims were bona fide disputes and the settlement was fair and equitable. *Id.* at 6-7. The settlement is for $2 million, from which will be deducted: attorneys' fees of approximately $700,000 (35% of the settlement) or a lesser amount approved by the Court; costs of $8,140.74; administration costs of $27,628; service awards to the named plaintiffs totaling $20,000; and the employer's estimated share of payroll taxes. Doc. 109 at 5. The Court did express reservations about a confidentiality provision. Doc. 107 at 7. But the parties indicated they were agreeable to removing that provision. Doc. 109 at 5 n.3. Although the settlement was preliminarily approved, it was with the caveat that the Court would have to do more analysis on the issue of attorneys' fees once the opt-in period had ended. Doc. 107 at 8.

The Court approved notice to potential opt-in plaintiffs. *Id.* The parties issued the notice to 3,385 individuals. Doc. 109 at 4. The opt-in period was 60 days and has now passed. As noted above, 1,151 opt-in plaintiffs timely responded.

Based on the responses, this is the breakdown of the settlement:

- $2,000,000 (gross settlement amount)
- $708,140.74 (requested attorneys' fees and costs)
- $20,000.00 (service awards)
- $27,628.00 (administration costs)
- $1,244,231.26 (net settlement amount)
- $602,593.76 (payment to opt-in plaintiffs)
- $19,880.52 (estimated employer payroll taxes paid before reversion)

Doc. 110-1 at 2. On the overtime claim, there are 874 opt-in plaintiffs out of 2,455 (35.6%). The total amount to be paid on this claim is $302,844.41 out of a potential $582,669.81 (51.98%). On the meal claim, there are 964 out of 2,528 (38.1%). The total amount to be paid on this claim is $299,749.35 out of $618,130.51 (48.49%). The total paid to the class is $602,593.76. *Id.* at 2-3.

Plaintiffs have now moved for final certification and final approval of the settlement. Doc. 108. Defendants do not oppose the motion. *Id.* at 1.

## II. ANALYSIS

### A. Final Collective Action Certification

The Court first considers whether final certification of the class is warranted. This is necessary before the Court can approve the settlement. *Wisneski v. Belmont Mgmt. Co., Inc.,* 2021 WL 1999094, at *1 (D. Kan. 2021). Final certification turns on whether the plaintiffs are similarly situated. *Id.* The standard at this stage is stricter than with conditional certification. *Id.* The Court considers: "(1) the disparate factual and employment conditions of the individual plaintiffs; (2) defenses available to the defendant that are individual to each plaintiff; and (3) other fairness and procedural conditions." *Id.*

On the overtime claim, the parties agree that the error was attributable to a payroll vendor software issue, which applied to all employees. Doc. 109 at 8. All members of the class were equally impacted and are therefore "similarly situated" because they were subject to the same "decision, policy, or plan." *Roggenkamp v. Bold Transp., Inc.*, 2021 WL 7209984, at *1 (D. Kan. 2021). On the meal claim, there is slightly more variance. *See* Doc. 109 at 8. But "in general the facilities had a practice of not requiring hourly non-exempt employees to clock out for at least some of their 30-minute meal breaks." *Id.* Defendants concede for purposes of the settlement that the automatic deduction amounted to a "single decision, policy, or plan." *Id.* at 9. Although there would be some individual defenses, those differences are better considered in valuing the settlement, and the differences are not greater than the similarities shared by all plaintiffs. *Id.* The parties argue that fairness considerations favor allowing parties to proceed as a collective action. *Id.* at 9-10.

Based on this, the Court finds that Plaintiffs are similarly situated. Under the factors considered above, final certification of the collective action is warranted.

### B.  Final Approval of Settlement

Settlements in FLSA actions are subject to review by a court, which must determine whether the settlement is fair and reasonable. *Shepheard v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 5817074, at *2 (D. Kan. 2016). "[T]o approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees." *Gambrell v. Weber Carpet, Inc.*, 2012 WL 162403, at *2 (D. Kan. 2012). The Court addresses each of these considerations.

#### 1.  Bona Fide Dispute

The Court first considers whether these claims involve a bona fide dispute. The Court considers the following factors:

> (1) a description of the nature of the dispute (e.g., a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Elston v. Horizon Glob. Americas, Inc.*, 2020 WL 6318660, at *4 (D. Kan. 2020). The Court has found that a bona fide dispute exists as to the two settled claims. Doc. 107 at 6. This analysis has not changed.

5

### 2. Fair and Equitable Terms

Thus, although the Court has already addressed this, *see id.* at 7, the Court considers to whether the settlement terms are fair and equitable under the following factors:

> (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Elston*, 2020 WL 6318660, at *5. The Court again finds these factors are met.

The settlement was reached after the parties mediated and then engaged in additional settlement negotiations. Both parties agree there is uncertainty particularly as to the meal-period claim. Thus, settlement at this stage is beneficial as it avoids future litigation costs. The parties have also included reasonable service awards for the named Plaintiffs.[3] Individuals who have opted not to participate are not affected by the settlement and do not waive claims. Doc. 109 at 7. Finally, the Court notes that both parties have worked to facilitate the settlement through unopposed motion practice, which demonstrates both believe it is a fair and reasonable outcome. The Court therefore finds this standard is satisfied.

### 3. Attorneys' Fees

FLSA settlements must include a reasonable award of attorneys' fees. *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014). Percentage fees from a common fund must be reasonable. *Hoffman v. Poulsen Pizza LLC*, 2017 WL 25386, at *6 (D. Kan. 2017). To evaluate reasonableness, the Tenth Circuit uses "a hybrid approach, which combines the percentage of the fund method with the specific factors traditionally used to calculate the lodestar." *Elston*, 2020

---

[3] This includes $10,000 for Michelle Vasquez, and $5,000 each for Melissa Sims and Alicia Thompson. Doc. 109 at 23. These service awards are reasonable and fair under the circumstances.

WL 6318660, at *6. The lodestar represents the hours spent times a reasonable hourly rate. *Id.* Attorneys' fees are then evaluated using the *Johnson*[4] factors:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* Other cases have recognized that "it's not uncommon in FLSA cases for attorneys' fees awards to exceed the damages recovered by employees." *James v. Boyd Gaming Corp.*, 2022 WL 4482477, at *13 (D. Kan. 2022). Therefore, fee awards in FLSA cases are not generally judged in proportion to the plaintiffs' recovery. *Id.*; *see also Garcia*, 770 F.3d at 1311 ("[T]he fee award need not be proportionate to the damages award."). The Court next considers the requested fees in light of the *Johnson* factors. The Court groups some of the factors but has considered them all.

a. **Time and Labor Required**

A lodestar cross-check is not specifically required in a common-fund settlement. *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1265 (10th Cir. 2023). But it is helpful in evaluating the first *Johnson* factor. Plaintiffs attached to their motion a declaration by Brad Thoenen, lead attorney in the case. Doc. 109-3. The declaration states that four attorneys, two paralegals, one summer associate, and one hourly assistant worked on this case. *Id.* ¶ 6. The blended rate (ranging from $125 through $625) is $333.57. *Id.* ¶ 27.[5] These rates are reasonable. *Elston*, 2020 WL

---

[4] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[5] Brad Thoenen's rate is $600; he has 18 years experience and has worked in employment law since 2012 and has litigated several wage-and-hour cases. Doc. 109-3 at ¶¶ 4, 27. John Ziegelmeyer's rate is $625; he has 19 years experience and has focused on wage-and-hour and employment litigation. *Id.* ¶¶ 5.a, 27. Kevin Todd's rate is $300; he is a 2020 graduate and has focused on representing workers in employment matters, including wage-and-hour

6318660, at *7 ("Further, the requested $332.97 per hour falls within ranges that this Court has deemed reasonable for FLSA cases in the Kansas City area."); *James*, 2022 WL 4482477, at *15 (approving blended rate of $367 per hour); *Hoffman*, 2017 WL 25386, at *7 (approving rates of up to $600 per hour).

The declaration details the work done on the case through settlement. This includes work prior to filing in researching Defendants' corporate structure and contacting potential plaintiffs. The Court notes numerous opt-in plaintiffs filed notices shortly after the case was filed. *See* Doc. 107 at 2. The case also proceeded to Phase I discovery, which involved written discovery on both sides and new information about Defendants' corporate structure. Plaintiffs engaged an expert to begin preparing damage calculations. On October 15, 2024, the parties participated in a day-long mediation. Although they did not reach a resolution, they continued settlement discussions for the next few weeks. Shortly after mediation, Plaintiffs took the deposition of Defendants' COO and a Rule 30(b)(6) deposition. The parties ultimately reached a settlement on November 12, 2024, as Plaintiffs were beginning to prepare for conditional certification. *See* Doc. 109-3 at ¶¶ 7-18. The total hours worked is 1364.1 hours.[6] The lodestar is $455,022.50. *Id.* ¶ 27.

As part of the settlement, Plaintiffs are claiming more than the lodestar amount: $708,140.74. This represents a 1.56 multiplier ($708,140.74 ÷ $455,022.50). The Tenth Circuit has recognized that a multiplier as high as 2.8 is consistent with settlements routinely approved in the Tenth Circuit. *Voulgaris*, 60 F.4th at 1266.

---

litigation. *Id.* ¶¶ 5.b, 27. Ethan Crocket's rate is $275; he is a 2022 graduate who has focused on employment matters, including wage-and-hour litigation. *Id.* ¶¶ 5.c, 27.

[6] Most of the attorney hours come from Crockett (585.1) and Thoenen (388.8), while Ziegelmeyer (42.4) and Todd (22.8) only billed minimal hours. Doc. 109-3 at ¶ 27. The remaining hours are attributable to paralegals, a summer associate, and an hourly assistant. *Id.*

8

### b. Novelty and Difficulty, Skill Required, and Reputation of Attorneys

Plaintiffs argue that class and collective actions tend to be complex. They argue there were significant questions about certification, compensable work time, and joint liability. The nature of some of the claims also presented hurdles to proving liability and damages. Doc. 109 at 16-17. This required a degree of skill and the need to retain expert help. *Id.* Plaintiffs' counsel is experienced in this area of the law, which allows them to take FLSA cases, which few firms litigate. *Id.* at 17, 20. The Court is familiar with the challenges involved in pursuing large collective actions under the FLSA. *See Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. 2015) (noting that wage-and-hour claims "are governed by highly technical state and federal wage statutes and regulations"). These factors support an award of attorneys' fees.

### c. Preclusion of Other Employment

"There is an inherent preclusion of other work in litigating a complex case such as this on a contingency fee basis." *Id*. As discussed below, Plaintiffs' counsel took this case on a contingency basis. The time spent by at least two of the attorneys on the case was significant and took up most of 2024. The time spent on this case likely precluded work on other matters.

### d. Customary Fee and Awards in Similar Cases

Here, the requested fee award ($708,140.74) is 35.4% of the total fund ($2,000,000). This percentage is generally reasonable in common-fund cases. *See Elston*, 2020 WL 6318660, at *7 (noting that fee awards of "one-third or thereabouts" of a common fund are "generally deemed reasonable" (internal quotation and citation omitted)); *Hoffman*, 2017 WL 25386, at *9 (noting that fee awards have ranged from 4% to 58% of the common fund); *Shaw*, 2015 WL 1867861, at *6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." (citation omitted)).

The fact that some of the settlement fund is unclaimed and reverts to Defendants does not make this award fall outside the norm. "A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Voulgaris*, 60 F.4th at 1263 (cleaned up). The caselaw discussing acceptable percentages in common-fund cases are measured against the <u>gross</u> settlement fund, rather than the <u>net</u>. *See, e.g.*, *Cisneros v. EP Wrap-It Insulation, LLC*, 2022 WL 2304146, at *8 (D.N.M. 2022) ("Having considered the *Johnson* factors, the Court will approve the requested attorneys' fees award of $53,333.33, which is one-third of the gross settlement amount."); *Prim v. Ensign United States Drilling Inc.*, 2020 WL 4539630, at *4 (D. Colo. 2020) ("The Court previously found that the proposed $285,250 in attorney's fees, or 35% of the gross settlement amount, was reasonable."); *see also Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 767 (11th Cir. 2017) ("No case has held that a district court must consider only the actual payout in determining attorneys' fees." (cleaned up; internal quotation and citation omitted)).[7]

### e.   Contingent or Fixed Fee and Undesirability of Case

Plaintiffs' motion indicates the fee arrangement was entirely contingent. Doc. 109 at 19. Given the risk involved in a contingent-fee arrangement, this weighs in favor of the requested award. *Shaw*, 2015 WL 1867861, at *7 ("This factor thus weighs in favor of the requested fees

---

[7] Analysis of an attorneys' fee award is case specific. Application of the *Johnson* factors in a common-fund award might warrant a different outcome under different circumstances. *See Carter*, 701 F. App'x at 767; *see also Leigh v. Bottling Grp., LLC*, 2011 WL 1231161, at *5 (D. Md. 2011) ("While it remains to be seen whether a percentage of the fund award, rather than a lodestar amount, is appropriate in this case, the amount requested would clearly be subject to a reasonableness standard and Plaintiffs' counsel should appear at any settlement hearing prepared to demonstrate how the amount he requests is appropriate under that standard."). Other courts have likewise questioned the best method to use in reversionary common fund cases. *See Eastwood v. S. Farm Bureau Cas. Ins. Co.*, 2014 WL 4987421, at *7 (W.D. Ark. 2014) ("Although in most common-fund cases, class counsel's fee will be calculated according to the 'percentage of the benefit' approach, the 'benefit' in those common-fund cases refers to that which the class receives a result of the settlement. Here, it cannot be said that the 'benefit' obtained by the class is equivalent to the value of the common fund, since nearly half of the common fund is already earmarked for reversion to Defendant.").

because Class Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis.").[8]

### f. Time Limitations Imposed by the Client or Circumstances

While Plaintiffs report no specific time limitations, they do report that they worked expeditiously to reach the conditional certification phase to provide notice to potential class members so that as many employees as possible could participate before claims began to fall off under the statute of limitations. Doc. 109 at 19-20. While the Court has no reason to doubt that the parties acted with sufficient haste, it finds this factor is neutral. *See James*, 2022 WL 4482477, at *16 ("The court recognizes the time constraints imposed on counsel were real. But, the court finds that those time limitations are inherent in any engagement and not specific to an FLSA action like this one . . . .").

### g. Amount Involved and Results Obtained

Plaintiffs argue this factor weighs in favor of the fee request because, of the $2 million settlement, over $1.2 million was available to pay class claims. Doc. 109 at 20. "This includes 100% of the amount owed for bonus-related overtime compensation and liquidated damage[s] being paid to the Class, as well as significant compensation towards the meal-period claim," which was "still hotly contested by Defendants, who deny any liability under that claim." *Id.*

As discussed above, the parties' settlement is fair and reasonable and involves bona fide disputes. The parties worked to resolve the claims prior to certification and dispositive-motion briefing, and continued negotiating after mediation. The settlement provides finality. Overall, the amounts involved are significant. Although not all potential plaintiffs opted in, 35.6% of eligible

---

[8] Courts have found that the "undesirability" of a case is neutral factor where the contingency nature of a case is already considered. *James*, 2022 WL 4482477, at *16.

plaintiffs on the overtime claim did, which will provide payment of $302,844.41 (51.98% of the funds available). For the meal claim, 38.1% of eligible plaintiffs opted in, which will provide payment of $299,749.35 (48.49% of the funds available). The highest payment is $10,605.09, and the median payment is $275.53. *See* Doc. 110-1. This factor weighs in favor of the award.

        **h.**        **Nature and Length of Professional Relationship with Client**

Plaintiffs' counsel reports working with the named Plaintiffs and others for over a year, including in responding to discovery requests. Doc. 109 at 21. As other courts have noted, the impact of this factor is somewhat unclear. *James*, 2022 WL 4482477, at *17. Therefore, this factor weighs neutral.

In sum, after considering the relevant considerations, the Court finds that the attorneys' fees agreed to by the parties as part of the settlement are reasonable.

**III.**    **CONCLUSION**

Based on the unopposed motion, the Court finds that final certification of this matter as a collective action is appropriate under the relevant factors. The Court finds that the settlement should be approved because it involves a bona fide dispute and the settlement is fair and equitable. Finally, the Court finds the requested attorneys' fees are reasonable.

THE COURT THEREFORE ORDERS that Plaintiffs' Unopposed Motion for Final Certification and Approval of FLSA Collective Action Settlement (Doc. 108) is GRANTED.

IT IS SO ORDERED.

Dated: September 5, 2025                /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE